UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judge AtLee, Athey and Callins
Argued at Richmond, Virginia


DAVID BRADFORD LLEWELLYN, ET AL.

v.      Record No. 2077-23-2

ANN MICHELLE WHITE                           MEMORANDUM OPINION[*] BY
                                             JUDGE RICHARD Y. ATLEE, JR.
ANN ELIZABETH LLEWELLYN                              JULY 22, 2025

v.      Record No. 2091-23-2

ANN MICHELLE WHITE


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

James J. O'Keeffe (E. Kyle McNew; Alan D. Bart; MichieHamlett
PLLC; Reed Smith LLP, on briefs), for appellant David Bradford
Llewellyn.

(Leonard C. Tengco; Tengco Law PLLC, on briefs), for appellant
Ann Elizabeth Llewellyn.

Rachel L. Yates (Law Office of Rachel Yates, PLLC, on briefs), for
appellee.


In these consolidated cases, David Bradford Llewellyn ("Brad") and Ann Elizabeth

Llewellyn ("Ann") (collectively, "the Llewellyns") appeal the circuit court's decision granting

judgment in favor of Ann Michelle White after concluding that Ann had fraudulently conveyed

real property to Brad to escape liability to White. White called both Brad and Ann to testify at

trial as part of her case-in-chief, and both steadfastly denied any fraudulent intent. Because that

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

testimony was uncontradicted and not inherently improbable, White was bound by their answers under the adverse party witness rule. Accordingly, we reverse the circuit court's judgment.[1]

## I. BACKGROUND

Ann and Brad married each other in 1995 and had three children. Around 2008, they purchased a property at 346 Ziontown Road. In May 2011, they purchased an adjacent property at 350 Ziontown Road ("the marital residence") "as tenants by the entirety with the right of survivorship."

Around that time, the couple increasingly clashed over the family's finances. They had lost a substantial amount of money in the stock market and had invested $640,000 in a business venture in Panama. Brad also started a new company named "WhereNext" that "wasn't very successful."

Ann and Brad separated in late 2011 and signed a property settlement agreement in February 2012. Under that agreement, Ann would "retain all right, title and interest in the Marital Residence free of any claim or interest of" Brad, and Brad would "waive any claim or interest in the Marital Residence." The agreement also stated that "for and in consideration of the terms of th[e] Agreement, [Brad] does hereby bargain, sell, grant and convey, with General Warranty and English Covenants of Title unto [Ann], the Marital Residence." The agreement contained similar provisions granting 346 Ziontown Road to Brad and a third property referred to as "the River House" to Ann. WhereNext and the Panama investment would also go to Brad. Brad also agreed to pay medical expenses, spousal support, and child support, though the Llewellyns subsequently executed an addendum requiring Brad to "pay all reasonable living expenses" for Ann and the children in lieu of the spousal support and child support specified in

---

[1] We grant White's unopposed motion to amend her appellee brief in Record No. 2077-23-2.

- 2 -

the February 2012 agreement. Although the property settlement agreement contemplated that the Llewellyns may need to execute additional instruments, such as deeds or title transfers, "to give full force and effect to the provisions of th[e] agreement," they never did so. They reconciled in late 2012.

In July 2013, Ann was exiting the marital residence driveway when she collided with a car being driven by White. White was seriously injured.

Ann and Brad separated again in 2014. Their financial woes had worsened since the 2012 property settlement agreement; the value of the Panama investment and WhereNext—both of which Brad had taken under the 2012 agreement—had both dropped to zero. They also sold the house at 346 Ziontown Road in May 2014.[2] The parties began to renegotiate a new property settlement agreement. In April 2015, they signed an addendum to the 2012 agreement modifying Brad's support payments. That addendum did not address the marital residence.

In July 2015, White sued both Ann and Brad, claiming that Ann had been negligent in causing the car accident and that Ann and Brad were both negligent in failing to properly prune vegetation around their driveway (the "personal injury suit"). White sought $3 million in compensatory damages jointly and severally from Ann and Brad and $350,000 in punitive damages from Ann. Brad filed a demurrer that same month.

On December 10, 2015, Ann and Brad signed a third addendum to the property settlement agreement.[3] After stating that Ann and Brad owned the marital residence "as tenants by the entirety," the addendum contained similar conveyance language as the original agreement, but this time granting the property to Brad instead of Ann. The agreement also modified Brad's support payments once again, providing for an additional $1,800 per month in spousal support

---

[2] Brad testified that they sold the property at a net loss of $40,000.

[3] That addendum was incorrectly labeled the "second addendum."

- 3 -

for 30 years.  On December 30, 2015, Ann and Brad obtained a final divorce decree, which affirmed, ratified, and incorporated the property settlement agreement and various addenda but did not merge them.

In January 2016, the Circuit Court of Henrico County sustained Brad's demurrer in the personal injury suit without prejudice.[4]  White filed an amended complaint, and Brad again demurred.  In June 2016, the circuit court granted Brad's demurrer with prejudice and dismissed him from the personal injury suit.

In November 2016, the Llewellyns executed a deed of gift, granting Brad fee simple title to the marital residence "for and in consideration of mutual love and affection."  Despite that conveyance, Ann continued to live at the marital residence without paying rent.

In March 2018, White initiated this lawsuit against Ann and Brad, seeking to void the conveyance of the marital home as fraudulent.  A few months later, in June 2018, a jury awarded White $1.5 million in the personal injury suit.  White recovered $750,000 from her own underinsured motorist insurance and $250,000 from Ann's insurance but was unable to recover the balance of the judgment from Ann.

The fraudulent conveyance case proceeded to a one-day bench trial.  After testifying on her own behalf, White called Ann as an adverse witness during her case-in-chief.  Ann testified that she did not believe that the 2012 property settlement agreement was binding because the parties had reconciled.  Thus, she believed that she and Brad continued to own the marital residence as tenants by the entirety.

When White asked Ann if she had agreed to give the marital residence to Brad because of White's lawsuit, Ann responded, "[t]hat is not correct."  Ann explained that the 2012 agreement

---

[4] The court's January 2016 order references a December 22, 2015 letter opinion purportedly setting forth the court's rulings.  That letter opinion is not in the record.

was no longer equitable in 2015 because much of the property that Brad would have received under the 2012 agreement, including WhereNext, the Panama investment, and 346 Ziontown Road, was worthless in 2015. The parties therefore renegotiated the agreement to reach a more equitable resolution based on their 2015 assets. Ann admitted that the financial changes had occurred by April 2015 but explained that the April 2015 addendum did not address the marital residence because she was refusing to talk to Brad at that point and maintained hope that the parties might again reconcile. She believed that the December 2015 addendum conveyed the marital residence to Brad and that the 2016 deed was just a legal "formality."

White asked Ann a second time to confirm that they "decided to change who got the house" because of White's lawsuit. Ann responded, "[n]o, and I think I already said that a couple of times already." White later asked Ann a third time to agree that she had conveyed the marital residence to Brad because of the lawsuit, and Ann again responded, "[n]o, that's not correct."

White then called Brad as an adverse witness. When White asked him whether "the house was conveyed to [him] . . . because of [White's] lawsuit," Brad responded, "[n]o." And when she asked him whether the house was absent from the April 2015 addendum because White had not yet filed the personal injury lawsuit, Brad again responded, "[n]o."[5] Similar to Ann, Brad testified that the April and December 2015 addenda came about because the parties "were negotiating a lot of things" because "[a] lot of things had changed" with the couple's financial situation after 2012. Brad's understanding was that he received the marital residence

---

[5] Brad later testified as part of his own case-in-chief and again claimed that White's lawsuit "didn't have an impact" on the decision to convey the marital residence. Ann also reiterated during her case-in-chief that the personal injury suit did not play a role in the conveyance decision.

when the final divorce decree was entered, not when he and Ann executed the December 2015 addendum.

White's final witness was forensic accountant Leslie Robson, who testified as an expert witness. Robson opined on direct examination that Brad had received $160,000 more value from the December 2015 property division than did Ann. On cross-examination, however, Robson admitted that his analysis assumed that Ann owned a 100% interest in the marital residence before December 2015. When asked to assume that Brad owned a 50% interest in that property before the conveyance, Robson opined that Ann would have received $90,000 more value than Brad, given the value of Brad's support payments. Robson also testified that the Llewellyns realized a net gain of $259,866 from the sale of 346 Ziontown Road.

The circuit court found that White had proved "badges of fraud" sufficient to establish a prima facie case and shift the burden of production to Ann and Brad.[6] But the court ruled that White retained the burden of persuasion by clear and convincing evidence. In the court's view, Ann and Brad credibly "denied that the reason . . . the conveyance had taken place is because they were sued" and that their testimony "as to their intent at the time of the transfer of the real estate at issue was credible and sufficient to successfully rebut any presumption of fraudulent intent established by" White. Thus, the court entered judgment in Ann and Brad's favor.

---

[6] The Supreme Court has recognized the following badges of fraud:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*White v. Llewellyn*, 299 Va. 658, 664-65 (2021) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 254 (2017)).

The Supreme Court reversed, explaining that, once the plaintiff can demonstrate a badge of fraud, the burdens of production *and* persuasion shift to the defendant(s). *White v. Llewellyn*, 299 Va. 658, 670 (2021). Accordingly, the Supreme Court remanded the case to the circuit court to apply the correct standard. *Id.*

The circuit court received additional briefing but did not hold another evidentiary hearing. The court then changed course from its prior decision and ruled in White's favor, concluding that Ann and Brad had failed to prove the transaction's bona fides by "strong and clear evidence." By final order, the court set aside the transfer of the marital residence as fraudulent and awarded White $488,280.25 in attorney fees, owed jointly and severally by Ann and Brad. Ann and Brad each appealed, and these cases were consolidated.

## II. ANALYSIS

"A party seeking to void a conveyance as fraudulent has the burden of proving by clear, cogent, and convincing evidence that the conveyance was made with intent to delay, hinder, or defraud creditors, and that the grantee had notice of the grantor's fraudulent intent." *White*, 299 Va. at 664; *see also* Code § 55.1-400. "[A] presumption of fraudulent conveyance arises when badges of fraud are proven." *White*, 299 Va. at 664. If the plaintiff proves at least one badge of fraud, "the burden of proof shifts to the defendant 'to establish the bona fides of the transaction' . . . by strong and clear evidence." *Id.* at 668 (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 254 (2017)). "[S]trong and clear evidence rebuts a prima facie case of a fraudulent conveyance if it gives a countervailing explanation for the opposing party's badges of fraud." *Id.*

Ordinarily, we review a circuit court's factual findings to determine "whether they are 'plainly wrong or without evidence to support [them].'" *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021) (alteration in original) (quoting *Ferguson v. Stokes*, 287 Va. 446, 450 (2014)). But

our review of the evidence in this case must also be "informed by the 'adverse party witness' rule, which provides that 'when an adverse party is called and examined by an opposing party, the latter is bound by all of the former's testimony that is uncontradicted and is not inherently improbable.'" *Colas v. Tyree*, 302 Va. 17, 26 (2023) (quoting *Economopoulos v. Kolaitis*, 259 Va. 806, 812 (2000)). "When testimony of an adverse party witness is involved, a reviewing court does not look to the witness's credibility globally, as it would in an ordinary sufficiency of the evidence case." *Id.* at 28. "Rather, the adverse party witness rule requires a reviewing court to examine the testimony of a party called as a witness by the opposing party and to sift what is uncontradicted from what is contradicted (or inherently incredible)." *Id.* "If testimony from an adverse party witness is uncontradicted on a specific factual point, the plaintiff is bound by it." *Id.* Moreover, "specific factual testimony" cannot "be overcome by . . . inferences drawn from primary facts, or 'negative' testimony from a witness." *Id.*; *see Ragland v. Rutledge*, 234 Va. 216, 219 (1987) (inference that the truck was in the wrong lane "cannot serve to contradict the clear and reasonable testimony of the truck driver that the truck remained in the proper lane").

The adverse party witness rule is fatal to White's case.[7] White called both Ann and Brad to testify as adverse party witnesses during White's case-in-chief. Ann repeatedly denied that she had conveyed the marital residence to Brad to evade a potential judgment in the personal injury lawsuit. Brad made the same denials. And both witnesses provided the same countervailing explanation

_____

[7] Brad told the circuit court that he and Ann were White's "opposing parties," whose testimony "ha[d] to be accepted as truthful and accurate except to the extent refuted or contradicted by other testimony." Because that "ha[d] not occurred," Brad asserted that the court was bound by his and Ann's testimony. And he reiterated that argument on remand. We reject White's argument that Brad failed to preserve his argument based on the adverse party witness rule because he did not specifically ask the circuit court "to 'sift' through the testimony." Rule 5A:18 requires only enough specificity for the trial court to know "the particular point being made in time to do something about it." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (emphasis omitted) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). Brad's argument satisfied that requirement. And because it would be impossible for the circuit court to void the conveyance as to Ann but not as to Brad, it is irrelevant whether Ann separately preserved the argument.

with the conveyance: that they renegotiated a more equitable distribution given that many of the assets that Brad would have received under the original agreement were worthless by December 2015.

White contends that Robson's testimony contradicted Ann and Brad's testimony about intent.[8] We disagree. First, Robson's conclusion that Brad received $160,000 in value more than Ann under the December 2015 addendum was based on the flawed assumption that Brad had no interest in the marital residence before the transfer. Robson admitted during cross-examination that if the parties jointly owned the property, Ann would have received the greater value, even with Brad receiving the marital residence. Second, even if Brad did receive the better bargain, that fact would at most give rise to an inference that the Llewellyns' intent was not what they claimed. And an inference cannot contradict specific factual testimony. *Colas*, 302 Va. at 28. Similarly, Robson's testimony that the Llewellyns gained from the sale of 346 Ziontown Road may have contradicted Brad's testimony that they had not, but it did not directly contradict Ann or Brad's testimony about their intent. *See id.* (explaining that the adverse party witness rule is concerned with specific factual claims, not witness credibility globally).

Moreover, the mere existence of badges of fraud cannot defeat specific testimony about Ann and Brad's intent. If the defendant's burden to provide a countervailing explanation for badges of fraud required him or her to disprove the factual predicates of each badge, every transfer between family members for allegedly antecedent debt or every conveyance lacking consideration would be irrefutably fraudulent. But "[b]adges of fraud do not, of themselves, decide issues." *Grayson*, 300 Va. at 59 n.24 (quoting Doug Rendleman, *Enforcement of Judgments and Liens in Virginia* § 11.2[C][1], at 11-11 (3d ed. 2014 & Supp. 2020)). "[T]hey merely 'realign the burdens of

_____

[8] White also points to the deed of gift's language that the transfer resulted from "love and affection." That language did not contradict Ann or Brad's testimony that the transfer resulted from a desire to equitably distribute their property with each other.

presentation and proof.'" *Id.* (quoting Rendleman, *supra* § 11.2[C][1], at 11-11). Put another way, badges of fraud give rise to a presumption that the relevant parties acted fraudulently. *White*, 299 Va. at 664. Presumptions can be rebutted. *Id.* at 670. Here, the presumption was rebutted by Ann and Brad's uncontradicted testimony that they did not act with fraudulent intent.

A court may not set aside a conveyance as fraudulent unless the conveyance was made "with intent to delay, hinder, or defraud creditors." Code § 55.1-400. Ann and Brad both denied having such intent while testifying as adverse party witnesses.[9] Because their testimony was neither contradicted nor inherently improbable, the circuit court was bound by it.[10] Accordingly, the circuit court erred by setting aside the transaction under Code § 55.1-400.[11]

When the court sets aside a conveyance as fraudulent, it may assess sanctions and attorney fees against the parties "who, with intent to defraud and having knowledge of the judgment, participated in the conveyance." Code § 55.1-403. Because we conclude that the circuit court erred

---

[9] White also asks us to hold "that when opposing counsel calls the same witness for additional testimony, the original party does not continue to 'vouch' for that witness any longer." We discern no reason—and White provides none—why multiple parties cannot each represent a witness "as worthy of credit." *Colas*, 302 Va. at 26 (quoting I Francis Wharton, *A Commentary on the Law of Evidence in Civil Cases* 523-24 (1877)).

[10] The circuit court originally found that Ann and Brad testified credibly about their intent. And although the circuit court was not necessarily bound by that finding on remand, we note that the court heard no new evidence post-remand that could have affected its original credibility determination.

[11] White concedes that, notwithstanding the 2012 property settlement agreement, Ann and Brad owned the marital residence as tenants by the entirety until entry of the final divorce decree, which incorporated the December 2015 addendum conveying the property to Brad. "[N]o creditor of only one spouse can attach property held by both spouses as tenants by the entirety." *Evans v. Evans*, 290 Va. 176, 184 (2015). In *Vasilion v. Vasilion*, 192 Va. 735, 743 (1951), the Supreme Court held that a husband's creditor was not entitled to rescission of a deed conveying property from both spouses to the wife even though the stated purpose of the conveyance was to evade the creditor because the creditor could not have attached the property before the conveyance. Thus, even prior to Brad and Ann conveying the property to Brad, White could not have obtained a lien on the property.

- 10 -

in setting aside the conveyance as fraudulent, the court also erred in ordering Ann and Brad to pay White's attorney fees.  Accordingly, we reverse the attorney fees award.

III.  CONCLUSION

For these reasons, the circuit court's judgment is reversed and judgment is entered in appellants' favor.

*Reversed.*